UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| PERRY SMITH and THERESA SMITH, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 3:20-CV-053-JD-MGG |
| | ) | |
| METROPOLITAN PROPERTY AND | ) | |
| CASUALTY INSURANCE COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

On May 20, 2018, an accidental fire consumed the home of Perry and Theresa Smith. The Smiths entered a claim with their insurer, Metropolitan Group Property and Casualty Insurance Company,[1] to recover the losses to their home and personal property. Metropolitan only paid a portion of the loss claimed by the Smiths. The Smiths brought this action to recover their full losses requested in their claim and any other just and proper relief. Metropolitan has moved for summary judgment [DE 23], arguing the Smiths' claims should be barred by judicial estoppel. For the following reasons, the Court denies the motion.

## I.     Factual Background

On April 9, 2018, Perry Smith individually filed for Chapter 13 bankruptcy in the Northern District of Indiana. [DE 18-2]. In his initial bankruptcy schedules, Mr. Smith valued his home at $186,200.00 and his total personal property (including vehicles and personal items) at $13,920.05. [DE 18-3 at 10, 15]. On May 20, 2018, the Smiths' home and personal property were damaged by a fire. [DE 18-5 at 43:10-12].

---

[1] Metropolitan was incorrectly named in the pleadings as Metropolitan Property and Casualty Insurance Company.

The Smiths obtained estimates for the replacement of their home and personal property. [DE 22-4 ¶ 2]. Based on these estimates, the Smiths then brought a claim with their insurer, Metropolitan, to cover fire damage to their home. Metropolitan provided the Smiths some relief that was used to pay the mortgage lien and replace some personal property. [*Id.* ¶ 9].

On October 30, 2018, Metropolitan conducted Mr. Smith's examination under oath. [DE 18-5]. During his examination, Metropolitan's counsel reviewed the losses claimed and the values listed on Mr. Smith's bankruptcy schedules. Mr. Smith stated that many of the bankruptcy values were low compared to the losses. [DE 18-5 at 41:19; DE 22-4 ¶ 4]. He estimated the value to rebuild the home would now be $380,000. [DE 18-5 at 43:18-21; DE 22-4 ¶ 5]. When Metropolitan's counsel noted personal property claimed as a loss that was not listed on the bankruptcy schedules, Mr. Smith stated he was unaware of a reason for the omissions. [DE 18-5 at 41:20-21].

Mr. Smith later amended his bankruptcy schedules on November 15, 2019. [DE 18-4]. In those amended schedules, Mr. Smith valued his home at $510,269.84 and his total personal property at $169,741.04. [*Id.* at 1, 7]. The amended schedules included a more complete report of Mr. Smith's personal property with much of that property listed at its estimated replacement value. [*Id.* at 8-9]. On December 19, 2019, the Smiths brought this action against Metropolitan.

## II.   Standard

A court must grant summary judgment if the movant shows that there "is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A "material" fact is one identified by the substantive law as affecting the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A "genuine issue" exists with respect to any material fact when "the evidence is such that a reasonable jury could return a

verdict for the nonmoving party." *Id.* Where a factual record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial, and summary judgment should be granted. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In determining whether a genuine issue of material fact exists, courts must construe all facts in the light most favorable to the non-moving party and draw all reasonable and justifiable inferences in that party's favor. *Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008); *King v. Preferred Tech. Grp.*, 166 F.3d 887, 890 (7th Cir. 1999). The non-moving party cannot simply rest on its pleadings but must present evidence sufficient to show the existence of each element of its case on which it will bear the burden at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).

### III.   Discussion

Metropolitan argues the Smiths' claims should be judicially estopped because of Perry Smith's nondisclosures and inconsistent representations to the bankruptcy court. Before the Court can address the parties' arguments, it must settle two preliminary matters.

Federal courts must apply state "substantive" law but federal "procedural" law where state law supplies the rule of decision. *See Gacek v. Am. Airlines, Inc.*, 614 F.3d 298, 301-02 (7th Cir. 2010). Relying on this well-established rule, both sides have argued that Indiana law controls the decision in this case. While that is generally true, application of the doctrine of judicial estoppel does not require deference to state law. *See Ogden Martin Sys., Inc. v. Whiting Corp.*, 179 F.3d 523, 527 n.1 (7th Cir. 1999) (applying federal doctrine of judicial estoppel in a diversity case).[2] Even in cases arising under diversity jurisdiction, "federal, rather than state, law

---

[2] In addition to the Seventh Circuit, every federal appellate court faced with this issue has applied the federal doctrine of judicial estoppel despite the underlying claims arising under state law. *See, e.g.*, *Eastman v. Union Pac. R.R. Co.*, 493 F.3d 1151, 1156 (10th Cir. 2007); *Hall v. GE Plastic Pac. PTE Ltd.*, 327 F.3d 391, 395 (5th Cir. 2003); *G-I Holdings, Inc. v. Reliance Ins. Co.*, 586 F.3d 247, 261 (3d Cir.

should dictate the applicability of the principle of judicial estoppel[.]" *Id.* Judicial estoppel is an equitable doctrine "designed to protect the federal judicial process." *Eastman v. Union Pac. R.R.*, 493 F.3d 1151, 1156 (10th Cir. 2007). "A federal court's ability to protect itself from manipulation should not depend upon the law of the state under which some or all of the claims arise." *Id.* Therefore, although this case brings only state claims through diversity jurisdiction, the Court shall apply the federal doctrine of judicial estoppel when assessing Metropolitan's motion for summary judgment.

Another preliminary matter relates to the what evidence the court can consider. All parties have asked the Court to take judicial notice of bankruptcy schedules and other filings. *See* Fed. R. Evid. 201(b). The Court may take judicial notice of matters of public record, *see United States v. Wood*, 925 F.2d 1580, 1582 (7th Cir. 1991), and must take judicial notice of facts if a party requests it and provides the necessary information. Fed. R. Evid. 201(c)(2); *see also Opoka v. INS*, 94 F.3d 392, 395 (7th Cir. 1996). The parties have requested the court take judicial notice of the contents of the bankruptcy proceedings, including the docket and schedules. The Court grants the parties' request and takes judicial notice of the bankruptcy docket and schedules. *See Cincinnati Life Ins. Co. v. Grottenhuis*, 2011 U.S. Dist. LEXIS 31857, at *11 n.2 (S.D. Ind. Mar. 23, 2011) (taking judicial notice of bankruptcy filings and schedules for purposes of evaluating a judicial estoppel claim). Having resolved these issues, the Court now turns to the parties' arguments.

---

2009); *Rissetto v. Plumbers & Steamfitters Local 343*, 94 F.3d 597, 603-04 (9th Cir. 1996); *Guinness PLC v. Ward*, 955 F.2d 875, 899 n.20 (4th Cir. 1992); *Edwards v. Aetna Life Ins. Co.*, 690 F.2d 595, 598 n.4 (6th Cir. 1982).

A.      **Perry Smith's Claims**

Judicial estoppel is designed to "prevent the perversion of the judicial process" and should "be applied where 'intentional self-contradiction is being used as a means of obtaining unfair advantage in a forum designed for suitors seeking justice[.]'" *In re Cassidy*, 892 F.2d 637, 641 (7th Cir. 1990) (quoting *Scarano v. Central R. Co.*, 203 F.2d 510, 513 (3d Cir. 1953)). "It should not be used where it would work an injustice, such as where the former position was the product of inadvertence or mistake[,] or where there is only an appearance of inconsistency between the two positions but both may be reconciled." *Id.* at 642 (internal citations omitted). As commonly applied to bankruptcy proceedings, "a debtor who conceals a legal claim and denies owning the asset in bankruptcy is judicially estopped from later pursuing that claim to the debtor's personal benefit." *Matthews v. Potter*, 316 F. App'x 518, 522 (7th Cir. 2009); *see also Cannon-Stokes v. Potter*, 453 F.3d 446, 448 (7th Cir. 2006) ("[A] debtor in bankruptcy who denies owning an asset . . . cannot realize on that concealed asset after the bankruptcy ends.").

Before addressing the merits of judicial estoppel, the Court must first examine whether Mr. Smith has standing to bring his claims. *See Spaine v. Cmty. Contacts, Inc.*, 756 F.3d 542, 546 (7th Cir. 2014) (addressing standing without prompt from the parties "[b]ecause standing implicates subject matter jurisdiction"). At the time a debtor files a bankruptcy petition, the debtor's property becomes part of the bankruptcy estate, 11 U.S.C. § 541(a)(1), including any interest in property acquired after the commencement of the bankruptcy action, 11 U.S.C. §§ 541(a)(7), 1306(a)(1). The debtor's property includes any legal claims that may be prosecuted for the benefit of the estate. *Cable v. Ivy Tech State Coll.*, 200 F.3d 467, 472-73 (7th Cir. 1999), *overruled on other grounds by Hill v. Tangherlini*, 724 F.3d 965 (7th Cir. 2013). Property of the

estate that is not abandoned or administered in the case remains property of the estate. 11 U.S.C. § 554(d). Mr. Smith's insurance claim and this litigation are therefore property of the estate.

A Chapter 13 debtor, like Mr. Smith, has standing to sue on behalf of the bankruptcy estate, but not for his own personal benefit. *See Williams v. Hainje*, 375 F. App'x 625, 627 (7th Cir. 2010) (citing *Cable*, 200 F.3d at 474-75); *see also* 11 U.S.C. § 1306(b) (a Chapter 13 debtor retains possession of all property of the estate); *Cable*, 200 F.3d at 473 (holding it would "frustrate the essential purpose of [§] 1306 to grant the debtor possession of the chose in action yet prohibit him from pursuing it for the benefit the estate"). A debtor's active misrepresentation when not disclosing his legal claims can demonstrate he is not bringing them for the benefit of the estate. *See Calvin v. Potter*, 2009 U.S. Dist. LEXIS 73862, at *9 (N.D. Ill. Aug. 20, 2009); *see also In re Wheeler*, 503 B.R. 694, 696 (Bankr. N.D. Ind. 2013) ("[C]hapter 13 debtors, in particular, have an ongoing obligation to provide the trustee with information concerning their income and expenses until the case is closed.").

After the bankruptcy case has closed, the "debtor no longer can pursue claims on behalf of the estate, and typically will be estopped from pursuing claims for his *own* benefit if those claims were concealed from creditors during the bankruptcy proceedings." *Rainey v. UPS*, 466 F. App'x 542, 544 (7th Cir. 2012) (citing *Cannon-Stokes,* 453 F.3d at 448) (emphasis in original). But so long as bankruptcy proceedings are ongoing, as they are here, a Chapter 13 debtor "can inform the trustee of previously undisclosed legal claims, and unless the trustee elects to abandon that property, the debtor may litigate the claims on behalf of the estate and for the benefit of the creditors without court approval." *Id.*; *see also Brinson v. Eagle Express Lines, Inc.*, 2019 U.S. Dist. LEXIS 17206, at *7-8 (N.D. Ill. Feb. 4, 2019).

Mr. Smith's standing, therefore, largely depends on whether he is bringing this suit on behalf or for the benefit of the estate. It is undisputed that Mr. Smith has not amended his schedules to include his insurance claim or this action, but he argues that he otherwise disclosed them to the trustee on two occasions: once in a September 6, 2019 email and a second time in a later communication. [DE 22-5 ¶ 4]. Mr. Smith has also represented that relief from this action would be used to pay the creditors' claims and represented the same to the trustee. [DE 18-8; DE 22-4 ¶ 8; DE 22-5 at 1-2].

The Court is satisfied that, to the extent Mr. Smith is seeking claims on behalf of and for the benefit of the estate, he has standing to pursue his claims. *See, e.g.*, *Williams v. Hainje*, 2009 U.S. Dist. LEXIS 82268, at *17 (N.D. Ind. Sept. 10, 2009) (allowing debtor-plaintiff to pursue his claims but only on limited standing to "seek[] recovery on behalf of the creditors"), *aff'd*, 375 F. App'x 625 (7th Cir. 2010).; *Wiggins v. Citizens Gas & Coke Util.*, 2008 U.S. Dist. LEXIS 79415, at *13-15 (S.D. Ind. Oct. 2008) (allowing debtor-plaintiff to pursue claims on behalf of the estate, but capping any surplus monetary recovery beyond the creditors' claims, interest, and trustee fees allowed in the bankruptcy case). As later detailed, the facts do not support he engaged in active misrepresentation and he has repeatedly represented to the trustee, the defendant, and the court that relief would be for the benefit of his creditors.

Satisfied that Mr. Smith has standing to pursue his claims, the Court must now determine whether his claims should be judicially estopped. Judicial estoppel is a doctrine "that induces debtors to be truthful in their bankruptcy filings" by raising the cost of lying, *Cannon-Stokes*, 453 F.3d at 448; however, it is focused on intentional wrongdoings. *See, e.g.*, *Chaveriat v. Williams Pipe Line Co.*, 11 F.3d 1420, 1428 (7th Cir. 1993) ("Judicial estoppel is strong medicine, and this has led courts and commentators to characterize the grounds for its invocation

in terms redolent of intentional wrongdoing."). Although judges should favor rules that encourage full disclosure in bankruptcy proceedings, they should not pursue that end "by applying judicial estoppel to [a debtor's] self-contradiction [that] would have adverse effects on third parties," *i.e.*, the creditors. *Biesek v. Soo Line R.R. Co.*, 440 F.3d 410, 413 (7th Cir. 2006); *see also Cannon-Stokes*, 453 F.3d at 448 ("Judicial estoppel is an equitable doctrine, and it is not equitable to employ it to injure creditors who are themselves victims of debtors' deceit.").

The evidence presented doesn't show Mr. Smith engaged in the kind of gamesmanship that warrants judicial estoppel. As for the unidentified personal property in the initial schedules, Mr. Smith was unaware of a reason for the omissions. [DE 18-5 at 41:20-21]. For those assets that Mr. Smith identified (including his home) but appeared to later claim an inconsistent value, the later value claimed to repair or replace them according to the policy would understandably be more than the fair market value initially reported. [DE 22-4 ¶¶ 2-6]. Mr. Smith kept the trustee apprised of the fire and his subsequent insurance claim. [DE 22-4 ¶ 7]. When the trustee was later notified about the inconsistent values, she seemed unconcerned and simply replied: "There are some issues – but to be honest I'm not really in this fight. It's a 100% plan anyway." [DE 22-5 at 2]. Although the trustee did not direct Mr. Smith to do so, he amended his schedules to account for the omitted personal property and listed either the fair market value or the replacement value of his property. [DE 18-4; DE 22-4 ¶ 4-6]. Mr. Smith informed the trustee of his insurance claim and potential litigation. [DE 22-5 ¶ 4].

Courts have held that, for purposes of applying judicial estoppel, a debtor-plaintiff has not concealed his assets when he expressly informs the trustee. *See Spaine*, 756 F.3d at 547 (allowing a debtor to orally disclose his claim to the trustee); *Stephenson v. Malloy*, 700 F.3d 265, 275 (6th Cir. 2012) (debtor was not concealing his claim when "his attorney communicated

freely about it with the trustee from nearly the inception of the bankruptcy proceeding, repeatedly seeking the trustee's guidance as to how the [claim] should be handled"); *Matthews*, 316 F. App'x at 522 (debtor orally disclosed his claim to trustee); *Eubanks v. CBSK Fin. Grp., Inc.*, 385 F.3d 894, 898 n.1 (6th Cir. 2004) ("a trustee's knowledge of the claim precludes the application of judicial estoppel since the plaintiff was obviously not trying to defraud the court if they placed the trustee on notice"); *see also Cincinnati Life Ins. Co. v. Grottenhuis*, 2011 U.S. Dist. LEXIS 31857, at *13 (S.D. Ind. Mar. 23, 2011).

For purposes of judicial estoppel, Mr. Smith disclosed the existence of his claims, and he further amended his schedules to reflect his assets and their replacement values. Of course, those disclosures might not prevent estoppel if Metropolitan can prove that Mr. Smith's omissions were an intentional effort to conceal his assets from his creditors. *See Spaine*, 756 F.3d at 548. But there is at least a genuine issue of fact as to Mr. Smith's intent to conceal—especially since his counsel was forthcoming about the fire, the inconsistent values, and the existence of his claims to the trustee. *See id.*; *see also Stephenson*, 700 F.3d at 275; *cf. Williams*, 2009 U.S. Dist. 82268 at *14-15 (plaintiff offered no facts to support an inference that his failure to disclose was anything other than purposeful concealment of an asset from his creditors).

Mr. Smith has not received a discharge of his debts, but he has received some benefit in his bankruptcy proceedings—his payment plan was confirmed on July 10, 2018 under the premise of incomplete schedules. *See, e.g.*, *Calvin*, 2009 U.S. Dist. LEXIS 73862 at *12-13. Although the information was incomplete, the Court is not convinced that plan was confirmed based on an intentional concealment. The best the Court can confirm is that Mr. Smith omitted certain assets and potentially undervalued his listed property, but the evidence raises a question of fact whether those omissions and representations were an attempt to gain some sort of

advantage or just the product of inadvertence or mistake. *See In re Cassidy*, 892 F.2d at 642. In fact, the Court can find little Mr. Smith could have gained from this seeing as his payment plan (as based on the initial schedules) already requires him to pay back all his unsecured debt. [DE 22-2 ¶ 10].

For other alleged omissions, they similarly do not show an intent to manipulate the bankruptcy court. Mr. Smith's insurance claim obviously accrued after his initial schedules. He informed the trustee about the fire, his insurance claim, and his potential lawsuit. [DE 22-4 ¶ 7; DE 22-5]. On this record, his actions do not rise to the kind of intentional concealment that warrants judicial estoppel. *See Eubanks*, 385 F.3d at 898 n.1 (plaintiff was "obviously not trying to defraud the court if they placed the trustee on notice"). Specifically, there is not strong evidence that Mr. Smith intentionally concealed assets "for gain, exercised deliberate or intentional manipulation or that he received a substantial benefit from the failure to disclose." *Fulmore v. M & M Transp. Servs.*, 2013 U.S. Dist. LEXIS 102608, at *7 (S.D. Ind. July 23, 2013). The fact that the bankruptcy case remains open and Mr. Smith has amended his schedules or otherwise disclosed his claims to the trustee is also highly pertinent as the creditors have an active interest in this litigation. *See, e.g.*, *Brinson v. Eagle Express Lines, Inc.*, 2019 U.S. Dist. LEXIS 17206, *8-9 (N.D. Ill. Feb. 4, 2019) ("where a Chapter 13 bankruptcy is open . . . and the plaintiff discloses the relevant suit, . . . preventing such a plaintiff from bringing his claims would undermine the interests of his creditors") (citing *Rainey*, 446 F. App'x at 545).

Even if the Court could clearly find evidence of gamesmanship in these facts, the Court should not "land another blow on the victims of bankruptcy fraud," the creditors, by applying judicial estoppel and completely foreclosing the possibility of their recovery. *Biesek*, 440 F.3d at 413 (where debtors have received a discharge due to concealment, courts should discourage

fraud by "revoking the debtors' discharges and referring them . . . for potential criminal prosecution" instead of applying judicial estoppel). That is particularly true in this case where Mr. Smith's scheduled assets were damaged or destroyed in the fire. The values listed in either the initial or amended schedules now depend on Metropolitan's payment of his losses, otherwise he does not actually have those assets to liquidate and disburse to his creditors.

Here, the application of judicial estoppel would do nothing but potentially work an injustice against Mr. Smith's creditors who could be made whole sooner rather than later if this action results in recovery. *See In re Cassidy*, 892 F.2d at 641. Construing the facts in the light most favorable to Mr. Smith, *see Jackson*, 541 F.3d at 697, there is a genuine issue of material fact as to whether he intentionally concealed his assets so to manipulate the bankruptcy court.

For these reasons, the Court declines to judicially estop Mr. Smith's claims. He is, however, only allowed to proceed on his claims on behalf of the bankruptcy estate. Whether his limited standing means his damages should be limited to the amount owed to his creditors in his bankruptcy case is a question better left within the jurisdiction of the bankruptcy court. *See Korti v. A.W. Holdings, LLC*, 2014 U.S. Dist. LEXIS 24888, at *17 (N.D. Ind. Feb. 26, 2014).

**B.      Theresa Smith's Claims**

For the first time on reply, Metropolitan attempts to develop an argument why Theresa Smith's individual claims should also be barred by her husband's representations or omissions to the bankruptcy court. Although Metropolitan labels this argument as judicial estoppel, it is actually based on a loss exclusion in the Smiths' insurance policy. *See, e.g.*, *Deeter v. Ind. Farmers Mut. Ins. Co.*, 999 N.E.2d 82, 86 (Ind. Ct. App. 2013) ("when an insurance company has included an explicit exclusion in its policy to cover loss that results from an intentional act by a co-insured, we will respect the parties' right to contract and enforce that exclusion").

Because Metropolitan sprung this argument on Mrs. Smith for the first time on reply, the Court treats it as waived. *See Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 571 (7th Cir. 2012) ("arguments raised for the first time in a reply brief are waived"); *see also Venters v. City of Delphi*, 123 F.3d 956, 968-69 (7th Cir. 1997) (finding an argument raised for the first time on reply deprived plaintiff of any reasonable opportunity to address the defense).

Metropolitan's arguments in its opening brief focused entirely on the representations to the bankruptcy court and requested that "Smith," referring to Perry Smith, "should be judicially estopped" from pursuing this litigation. [DE 18 at 9]. If this is intended to be an argument for judicially estopping Mrs. Smith's claims as well, it is perfunctory and arguably also waived. *See Crawford v. Countrywide Home Loans, Inc.*, 647 F.3d 642, 650 (7th Cir. 2011) (underdeveloped arguments are waived). Metropolitan has not presented an argument as to why or how she should be judicially estopped. Nor could they feasibly make such an argument based on these facts. Mrs. Smith has not filed for bankruptcy nor is she is a co-debtor in her husband's bankruptcy case. [DE 22-3 ¶ 3]. Her insurance claim covers losses to not only the property she jointly owned with her husband but also her personal property. [*Id.* ¶¶ 4-5]. She has not made any inconsistent statement, much less any intentional concealment, that shows she is trying to obtain an unfair advantage in this court. *See In re Cassidy*, 892 F.2d at 641. Because her claims cannot be judicially estopped and Metropolitan's contractual argument has been waived, the Court must also deny the motion for summary judgment as to Mrs. Smith's claims.

## IV.    CONCLUSION

Accordingly, the Court DENIES Metropolitan's motion for summary judgment. [DE 17].

The Court does GRANT the parties' requests to take judicial notice. [DE 19; DE 23].

SO ORDERED.

ENTERED:  October 7, 2020

            /s/ JON E. DEGUILIO
        Chief Judge
        United States District Court