## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
## SOUTH BEND DIVISION

| | | |
|---|---|---|
| PERRY SMITH and THERESA SMITH, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | CASE No. 3:20-cv-00053-JD-MGG |
| | ) | |
| METROPOLITAN PROPERTY AND | ) | |
| CASUALTY INSURANCE COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

### OPINION AND ORDER

Pending and ripe before the Court is the Motion to Compel Discovery [DE 27] filed on November 23, 2020, by Plaintiffs Perry and Theresa Smith ("the Smiths"). Through their Motion, the Smiths seek complete responses from Defendant, Metropolitan Group Property and Casualty Insurance Company ("Metropolitan"),[1] to their Rule 33 Interrogatories ("ROGs") 4–6 and 10–16 and Rule 34 Requests for Production ("RFPs") 1–5, 7–19, and 21–24 propounded on July 16, 2020.

### I.   RELEVANT BACKGROUND

Plaintiff Perry Smith ("Mr. Smith") filed for Chapter 13 bankruptcy on April 9, 2018. On the schedules accompanying his bankruptcy petition, Mr. Smith reported real estate assets in the amount of $186,200.00 and personal property assets in the amount of $13,920.05. [DE 18-3 at 8]. On May 20, 2018, the Smiths' home caught fire causing significant damage. The Smiths immediately entered a claim with Metropolitan, their

---

[1] Metropolitan was incorrectly named in the pleadings as Metropolitan Property and Casualty Insurance Company.

insurer, to recover losses to their home and personal property. As relevant here, Metropolitan paid the Smiths $186,200.00 for the dwelling, and $19,502.14 for personal property under the policy. Yet other estimates, including one by a builder hired by the Smiths, one by a Metropolitan employee, and one by a construction company hired by Metropolitan, ranged from $417,940.67 to $545,038.942. [DE 30 at 4]. Dissatisfied with Metropolitan's alleged undervaluation of their property loss claim, the Smiths initiated this action by filing their Complaint [DE 5] on December 19, 2019, raising breach of contract and bad faith claims against Metropolitan.

In defense of the Smiths' legal claims, Metropolitan asserts that while it obtained multiple estimates as to the value of the Smiths' property, it never made any determination as to which was controlling because it determined that the Smiths were entitled to the amount Mr. Smith listed in his bankruptcy petition. In fact, Metropolitan argued in a motion for summary judgment [DE 17] that the Smiths' claims are barred by judicial estoppel in light of Mr. Smith's nondisclosures and inconsistent representations to the bankruptcy court. This Court denied Metropolitan's motion for summary judgment on October 7, 2020, but acknowledged that estoppel may still affect the final outcome of this case "if Metropolitan can prove that Mr. Smith's omissions [regarding the existence of claims and the value of his assets] were an intentional effort to conceal his assets from his creditors." [DE 25 at 9 (citing *Spaine v. Cmty. Contacts, Inc.*, 756 F.3d 542, 548 (7th Cir. 2014))].

In the meantime, discovery proceeded. On July 16, 2020, the Smiths propounded the ROGs and RFPs at issue in the instant Motion. Metropolitan produced responses on August 17, 2020. Its responses included objections to some requests as overbroad, unduly burdensome, unreasonably calculated to lead to the discovery of admissible evidence, or protected by attorney client privilege and/or work product doctrine.

Finding Metropolitan's discovery responses deficient and unresponsive, the Smiths' attorney communicated with Metropolitan's counsel starting with a letter dated September 11, 2020. Responding via letter dated September 25, 2020, Metropolitan outlined the substantive nature of its ongoing objections but also produced some additional responsive information. Still unsatisfied, the Smiths sent a second letter to Metropolitan on October 8, 2020. Before Metropolitan responded directly to the second letter, the Smiths presented a settlement demand to Metropolitan on October 20, 2020. After that, the parties' communications focused on settlement negotiations, not the outstanding discovery matters. The Smiths did not mention the discovery matters again before filing the instant Motion to Compel on November 23, 2020. The Smiths' instant Motion became ripe on December 14, 2020, after Metropolitan filed a response brief but without any reply brief being filed.

Central to the discovery dispute raised in the instant Motion is the question of whether the Smiths are entitled to discovery related to their bad faith claim against Metropolitan given its ongoing reliance on the judicial estoppel doctrine in defending against the Smiths' legal claims here. Specifically, Metropolitan argues that the ROGs

and RFPs at issue are not reasonably calculated to lead to admissible evidence because it valued the Smiths' property loss claim consistent with Mr. Smith's value assessment in his bankruptcy petition. The Smiths, on the other hand, contend that they are entitled to independently review information regarding the basis for Metropolitan's decisions regarding their property loss claim, how Metropolitan generally makes claim decisions, and how Metropolitan made specific decisions on the Smiths' claim.

## II.    ANALYSIS

A party may "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). When addressing motions to compel filed under Fed. R. Civ. P. 37(a), the court has broad discretion and may deny discovery to protect a party from annoyance, embarrassment, oppression, or undue burden or expense. *See* Fed. R. Civ. P. 26(c); *Sattar v. Motorola, Inc.,* 138 F.3d 1164, 1171 (7th Cir. 1998); *Gile v. United Airlines, Inc.,* 95 F.3d 492, 495–96 (7th Cir. 1996). "[A] district court should independently determine the proper course of discovery based upon the arguments of the parties." *Gile,* 95 F.3d at 496.

In discovery, what is relevant includes more than what is admissible at trial. Instead, relevant matter includes "anything that appears reasonably calculated to lead the discovery of admissible evidence." *Barker v. Life Ins. Co. of N. Am.,* 265 F.R.D. 389, 393 (S.D. Ind. 2009) (internal citation omitted). Given the liberal scope of discovery under Fed. R. Civ. P. 26(b), "[t]he burden rests upon the objecting party to show why a

particular discovery request is improper." *Gingerich v. City of Elkhart Prob. Dep't*, 273,

F.R.D. 532, 536 (N.D. Ind. 2011) (internal citations omitted). Nevertheless, "the

proponent of a motion to compel discovery still bears the initial burden of proving that

the information sought is relevant." *United States v. Lake Cnty. Bd. of Comm'rs*, No. 2:04

CV 415, 2006 WL 978882, at *1 (N.D. Ind. Apr. 7, 2006) (internal quotation omitted); *see

also Greenbank v. Great Am. Assurance Co.*, No. 3:18-cv-00239-SEB-MPB, 2019 WL

6522885, at *3 (S.D. Ind. Dec. 4, 2019) ("A party moving to compel production carries the

initial burden of establishing, *with specificity*, that the requested documents are

relevant." (emphasis in original)).

Here, the parties disagree substantively as to the relevance and breadth of all the

disputed discovery requests with particular emphasis on the effect of Metropolitan's

judicial estoppel defense on discovery in this case. Procedurally, Metropolitan contends

that the Smiths did not file a separate certification of their efforts to confer with

Metropolitan regarding this dispute in violation of Fed. R. Civ. P. 37(a)(1) and N.D. Ind.

L.R. 37-1. Moreover, Metropolitan argues that the Smiths did not complete a good faith

effort to confer about the disputes before filing the instant Motion.

## A.    Local Rule 37-1 Concerns

A party filing a motion to compel "must include a certification that the movant

has in good faith conferred or attempted to confer with the person or party failing to

make disclosure or discovery in an effort to obtain it without court action." Fed. R. Civ.

P. 37(a)(1). Under this Court's Local Rules, such certification must be filed separately

5

and include specific information including "the date, time, and place of any conference or attempted conference; and the names of the parties participating in the conference." N.D. Ind. L.R. 37-1(a)(1)–(2). "The court may deny any [discovery-related] motion . . . if the required certification is not filed." N.D. Ind. L.R. 37-1(b).

Metropolitan asks the Court to deny the Smiths' instant Motion because they did not file separate certification of a good faith efforts to confer with Metropolitan about the discovery disputes as required by Local Rule 37-1. While it is true that the Smiths did not file a separate certification document, their attorney certified compliance with Local Rule 37-1 in the Motion itself then discussed the September and October 2020 letters in the supporting brief. Moreover, the Smiths attached the letters to their brief and those letters included the facts delineated in Local Rule 37-1. [DE 28-1].

Furthermore, "[c]ourts have broad discretion in determining whether the moving party has satisfied the meet-and-confer component of Federal Rule of Civil Procedure 37(a)(1) and Local Rule 37-1." *Washington v. Tovo*, No. 2:17-CV-128, 2018 WL 2126941, at *2 (N.D. Ind. May 9, 2018). When penalizing a moving party for procedural shortcomings only delays the resolution of the parties' underlying dispute and the movant complies with the purpose, if not the letter, of Rule 37-1, the motion should not be denied. *See id.* After all, decisions on the merits of a matter are far preferable to decisions based upon procedural deficiencies. *Id.*; *see also Felling v. Knight*, No. IP 01-0571-C-T/K, 2001 WL 1782361, at *1 (S.D. Ind. Dec. 21, 2001).

In deciding whether a moving party complied with the purpose of the good faith meet and confer requirement of Local Rule 37-1, "what matters is that a moving party must personally engage in two-way communication with the non-moving party to meaningfully discuss each contested discovery dispute in a genuine effort to avoid judicial intervention." *Vukadinovich v. Hanover Cmty. Sch. Corp.*, Cause No. 2:13-CV-144-PPS-PRC, 2014 WL 667830, at *2 (N.D. Ind. Feb. 20, 2014) (internal quotations omitted). As a result, Local Rule 37-1's good faith conference requirement can be met through a face-to-face meeting, a telephone conversation, or written communication (including email) that fosters a true-back-and-forth dialogue. *Id.*

Here, the Smiths' attorney's September 2020 letter effectively communicated their concerns about each disputed ROG and RFP. Metropolitan clearly appreciated the nature of the dispute as evidenced by its September 25, 2020, letter, and production in response. Yet Metropolitan chose not to respond to the Smiths' October 2020 letter discussing the then-current state of the discovery disputes. Rather, Metropolitan turned its attention to settlement negotiations without acknowledging the outstanding discovery disputes identified in the Smiths' October 2020 letter. Metropolitan's interest in pursuing settlement negotiations is understandable but does not negate the Smiths' good faith efforts through the September and October letters to foster a two-way dialogue about the discovery disputes. Thus, the Court will address the merits of the Smiths' instant Motion.

### B.      Judicial Estoppel

Though the Court denied Metropolitan's motion for summary judgment, which argued that the Smiths' legal claims should be barred by judicial estoppel, judicial estoppel has continued to be a central element in the parties' discovery disputes. Metropolitan has continued to argue that no response to certain of the Smiths' outstanding discovery requests is required because the Smiths are judicially estopped from seeking more than the property valuation Mr. Smith disclosed in his bankruptcy petition.[2] More specifically, Metropolitan has refused to produce information about its valuation software based on its conclusion that the value of the Smiths' property is not as issue given Mr. Smith's valuation of the home in his bankruptcy petition. Metropolitan also objects to all requests for manuals, instructions, rules, and regulations as irrelevant because it did not rely upon its internal methods of valuation to appraise the Smiths' claim arguing that judicial estoppel is similarly applicable.

The Smiths, on the other hand, argue they are not required to accept Metropolitan's judicial estoppel argument and are entitled to learn how Metropolitan made a decision about their property loss claim. Metropolitan rejects the Smiths' contentions reiterating that it accepted the value Mr. Smith himself listed in his bankruptcy petition and noting that the Smiths cited no legal authority allowing them

---

[2] Notably, Metropolitan would be unlikely to rely upon this judicial estoppel argument if Mr. Smith's bankruptcy-related valuation of his home exceeded other appraisals of the home's value at the time of the fire. Moreover, the value of the Smiths' home at the time Mr. Smith filed his bankruptcy petition is not likely to be determinative here if for no other reason than real estate markets and related home values fluctuate over time.

to ignore Metropolitan's judicial estoppel representations. Though this Court already found that Mr. Smith's conduct did not constitute "the kind of gamesmanship that warrants judicial estoppel[,]" [DE 25 at 8] Metropolitan still believes that judicial estoppel bars the Smiths from receiving valuation information beyond that included in Mr. Smith's bankruptcy petition. Metropolitan's belief is grounded in this Court's suggestion that "if Metropolitan can prove that Mr. Smith's omissions were an intentional effort to conceal his assets from his creditors." [DE 25 at 9].

Yet all that Metropolitan has successfully shown is that judicial estoppel may apply later in this litigation depending upon the evidence that surfaces during discovery. Metropolitan has not shown that the potential applicability of judicial estoppel—especially considering this Court's finding that evidence presented to date does not warrant judicial estoppel—justifies withholding any information related to its decisions about the Smiths' property loss claim. Indeed, under Fed. R. Civ. P. 26(b)(1) liberal discovery standard, Plaintiff is entitled to obtain information relevant to their bad faith claims through discovery.

Under Indiana Law, "a successful bad faith claim is composed of an objective element (such as the lack of a reasonable basis to deny a claim) and a subjective element (such as the knowledge of the lack of a reasonable basis to deny a claim)." *Thorne v. Member Select Ins. Co.*, 899 F. Supp. 2d 820, 826-27 (N.D. Ind. 2012) (quoting *Balzer v. Am. Fam. Ins. Co.*, 805 F. Supp. 2d 618, 624-25 (N.D. Ind. 2011)). Therefore, information about how Metropolitan handled the Smiths' claim could lead to admissible evidence as to the

reasonableness of denying their claim or Metropolitan's knowledge as to the reasonableness of denying their claim. *See Thorne*, 899 F. Supp. 2d at 827.

### C. Particular Discovery Disputes

#### 1. Software

As alluded to above, the Smiths' ROGs 4 and 5 and RFP 5 seek information about Metropolitan's valuation of their property and how it determined how much to pay on the Smiths' insurance claim. Specifically, ROG 4 asks Metropolitan to "[l]ist the names and types of software [it] uses to calculate the value of a property loss" while ROG 5 asks Metropolitan to "[l]ist the names and types of software used in any calculation or determination of amounts to be paid in connection with [the Smiths' claim]." [DE 27-1 at 4]. Similarly, RFP 5 asks for software used to compute costs of repair and value of home damage.[3] [DE 27-1 at 9]. Metropolitan objects to these requests as overbroad and not reasonably calculated to lead to the discovery of admissible evidence, or irrelevant, because it based the value of the Smiths' property loss claim on Mr. Smith's own valuation in his bankruptcy petition rather than any estimate made using the company's software. *See Barker*, 265 F.R.D. at 393. However, the Smiths contend that the software and related information sought through these requests are necessary to ascertain how Metropolitan valued and processed their property claim in comparison to other policyholders' similar claims handled by the company.

---

[3] RFP 5 also asks for Metropolitan's contracts with software vendors but the Smiths make no reference to this part of the RFP in their Motion. Having failed to develop any argument as to the requested contracts, the Smiths waived any such argument. *See United States v. Parkhurst*, 865 F.3d 509, 524 (7th Cir. 2017).

Despite Metropolitan's objections, the Smiths' ROG 4 seeks very general information about Metropolitan's valuation software that is not unduly burdensome for Metropolitan to produce. Moreover, it is relevant to the fundamental comparison between how the Smiths' claim was processed and how Metropolitan processes other similar claims. The Smiths' ROG 5 is also quite narrow, is easily produced, and is relevant because it pertains directly to the Smiths' claim. To the extent Metropolitan has not already produced information responsive to ROGs 4 and 5, they must do so now.

However, the Smiths' request for the actual software through RFP 5 exceeds the scope of discovery here. Metropolitan admits that three valuations of the Smiths' home are on record in this case: one for $417,940.67 by one of its own employees, one for $476,974.00 by Premier Builders who was hired by the Smiths, and one for $545,038.42 by Grecco Construction hired by Metropolitan. Metropolitan implies that its employee obtained the lowest estimate using the software the Smiths now seek. But the Smiths have not shown how the software itself, as requested in RFP 5, could provide insight into how Metropolitan processed their claim or other policyholders' claims especially when Metropolitan did not rely on any of the estimates in determining the value of the Smiths' claim and when Metropolitan has already produced a full range of information relevant to the processing of the Smiths' claim.[4] Moreover, the Smiths have not shown

---

[4] Without any rebuttal from the Smiths, Metropolitan reports having provided responses to the Smiths' discovery requests as follows:

> a redacted copy of the claim file, a manual for MGPCIC employees regarding homeowners' claims, photos of the scene of the house fire, an estimate of the value of the House provided by Grecco Construction, numerous emails and letters related to the

how the software itself could be used in support of their bad faith claim to show that there was no reasonable basis upon which Metropolitan could deny their claim and that Metropolitan knew there was no reasonable basis for a denial. *See Thorne,* 899 F.Supp.2d at 827.

The Smiths' reliance upon *Allstate Ins. Co. v. Scroghan*, 851 N.E.2d 317, 323–24 (Ind. Ct. App. 2006) to suggest that the requested software is relevant and discoverable is also misplaced. The Smiths are correct that the Indiana Court of Appeals in *Scroghan* affirmed production of Allstate's valuation software. *Id.* at 324. However, the *Scroghan* court never discussed the relevance or discoverability of the software. Instead, the court held that the software was the proper subject of a protective order given the proprietary nature of the software. *Id.* That offers nothing to help the Smiths establish the relevance of the software in light of their specific bad faith claim in this action.

Thus, Metropolitan has made a reasonable argument that production of the software—which is likely proprietary in nature as well— would not be proper in this case. *See Gingerich*, 273, F.R.D. at 536. Furthermore, the Smiths chose not to file a reply brief to rebut Metropolitan's argument despite being afforded more than ample time to

---

claim, the Smiths' loss report, and various notices related to the Smiths' MGPCIC policy on the House. In addition, MGPCIC has provided extensive documentation with its initial disclosures including emails and letters regarding the claim and Mr. Smith's bankruptcy, various estimates of the value of the House, various inventories of the Smiths' property, invoices and receipts for expenses incurred by the Smiths, Mr. Smiths' bankruptcy petition and docket, an agreement between CPR Claims and Mr. Smith, letters from MGPCIC to the Smiths, the fire investigation summary, and Mr. Smith's examination under oath transcript. [DE 30 at 3].

do so. *See* N.D. Ind. L.R. 7-1(d)(3)(B). As a result, the Smiths have not met their burden

to show, with specificity, the relevance of the actual software to their legal claims in this

action. *See Greenbank,* 2019 WL 6522885, at *3; *United States v. Lake Cnty. Bd. of Comm'rs,*

2006 WL 978882, at *1.

### 2.  Consultants Hired to Do Work on Claim

The Smiths' ROG 6 and RFP 4 seek information about the consultants

Metropolitan used when processing the Smiths' claim, thus providing information into

the valuation process. Specifically, ROG 6 seeks a list of all companies or persons

consulted with or hired to do any work in connection with the Smiths' claim and

information about the person or entity, the purpose of the consultation or work done,

and the type of work done, and a list of any documents exchanged. [DE 27-1 at 2]. RFP 4

asks for correspondence and documents with or involving Grecco Construction

Consultants regarding the Smiths' property. [DE 27-1 at 9].

Metropolitan argues ROG 6 is overly broad and unduly burdensome.

Nevertheless, Metropolitan produced information regarding Grecco Construction

Consultants in response. [DE 27-1 at 16]. Metropolitan later disclosed an additional

entity, Barnett Forensics, in its September 2020 letter to the Smiths regarding this

discovery dispute. [DE 28-1 at 14]. While Metropolitan contends that these disclosures

constitute a complete response to ROG 6, the Smiths believe that Metropolitan has

failed to include all names of persons or entities consulted. [*Compare* DE 28 at 4, *with* DE

30 at 6]. The Smiths' suspicions come from interactions they had with Metropolitan

prior to the case. [DE 28 at 4].

Similarly, the Smiths believe that Metropolitan has not provided complete responses to their RFP 4 despite Metropolitan's assertion to the contrary. The Smiths are skeptical because Metropolitan only produced the Grecco estimate and did not include any documents relating to email correspondence, payment, invoices, contracts, or other notes. Still, Metropolitan contends that all documents responsive to RFP 4 have been produced, that it has no written contract with Grecco, and any notes related to Grecco are in the redacted claim file already given to the Smiths. Yet Metropolitan has not addressed the Smiths' concern about lack of invoices, email correspondences, and draft of payment.

Metropolitan cannot produce information it does not possess or control. And the Smiths' suspicions that more information exists are not, on their own, sufficient evidence that Metropolitan is withholding responsive information. Nevertheless, Metropolitan has not objected to ROG 6 or RFP 4 so it cannot withhold any responsive information. Therefore, Metropolitan shall provide the Smiths with an Affidavit confirming that it produced everything responsive that it knows to be in its possession or control, or supplement its responses immediately.

### 3.      Support for Denials, Defenses, Interrogatories, and Offers

The Smiths' ROGs 10–16 and RFPs 7 and 10 seek information that supports Metropolitan's denials, affirmative defenses, responses to interrogatives, and settlement

14

offers. Through ROGs 10–16, or the Smiths' contention interrogatories, they seek all facts upon which Metropolitan based its denial of any allegation in the complaint and a list of all facts that support each of Metropolitan's affirmative defenses. Additionally, the Smiths request a list of persons with knowledge of each fact identified in response to ROGs 10–16 and any documents or tangible items that support those same facts. In RFP 7, the Smiths seek any documents listed or relied upon in response to interrogatories. In RFP 10, the Smiths request all documents supporting any offers Metropolitan made to them. Metropolitan originally objected to these discovery requests on grounds of privilege, work product, and undue burden citing *Amax Coal v. Adams*, 597 N.E.2d 350 (Ind. Ct. App. 1992) in support.

### a.      Requests for Facts

The court in *Amax Coal* validated the use of contention interrogatories. *Id.* at 352. The *Amax Coal* court also concluded that "a party may compel his opponent to disgorge whatever facts he has in his possession, even though they may be contained in a document which is not itself discoverable." *Id.* at 354 (citing *Hickman v. Taylor*, 329 U.S. 495, 507 (1947)). This Court has agreed. *Zimmer, Inc. v. Stryker Corp.*, No. 3:14-cv-152-JD-CAN, 2016 WL 11033917, at *6–*7 (N.D. Ind. Feb. 22, 2016) (acknowledging *Amax Coal* and finding inquiry into facts discoverable but precluding inquiry into the rationale for contentions based on privilege and work product ); *see also* Fed. R. Civ. P. 33(a)(2) ("An interrogatory is not objectionable merely because it asks for an opinion or contention that relates to fact or the application of law to fact."); Fed. R. Civ. P. 34(a) ("A party may

15

serve on any other party a request [for production] within the scope of Rule 26(b).

Here, the Smiths originally challenged Metropolitan's objections to ROGs 10–16 in their September 2020 letter. Before the instant motion to compel was filed, Metropolitan responded with its letter dated September 25, 2020, and directed the Smiths to responsive documents provided in its initial disclosures as well as references to all other responsive documents in its privilege log dated September 23, 2020. [DE 28-1 at 1–2]. In response to the instant motion, Metropolitan similarly reported that "[t]he facts relied on in answering the Complaint can be found in the documents produced, and are otherwise listed in the Privilege Log." [DE 30 at 6].

While the Smiths are correct that they are entitled to all facts requested in ROGs 10–16 and that affirmative defenses must be pled on a factual basis, they chose not to file a reply brief here to rebut Metropolitan's assertion that it has produced all the facts upon which it based its answer and defenses. Such an undeveloped argument is waived. *See United States v. Parkhurst*, 865 F.3d 509, 524 (7th Cir. 2017). Without more, this Court can only conclude that Metropolitan's production of facts responsive to ROGs 10–16 is undisputedly complete.

### b.   Requests for Lists of Persons

Under Fed. R. Civ. P. 26(a)(3), pretrial disclosures must include "the name and, if not previously provided, the address and telephone number of each witness." As persons with knowledge of the facts are witnesses, the Smiths are entitled to the

requested lists of persons with knowledge of the facts as requested in ROGs 10–16. Metropolitan's counsel is exempt from inclusion on the requested lists to the extent their knowledge of facts was obtained through trial preparation and communication with clients due to protections afforded by attorney client privilege and/or work product doctrine.

### c.    Requests for Documents and Tangible Items

The Smiths argue they are entitled to documents and tangible items that support the facts sought through ROGs 10–16. As noted above, *Amax Coal* found the facts underlying denials and defenses discoverable. 597 N.E.2d at 354. However, the *Amax Coal* court also recognized that responding to a request for documents and tangible things would require an attorney to "to select from the apparently vast array of [his client]'s discoverable documents the ones they considered pertinent when formulating [his client]'s pleading responses . . . ." *Id.* at 354. Thus, the *Amax Coal* court found that discovery rules do not require disclosure of documents used as support for pleadings, including answers and affirmative defenses, "[b]ecause identification of the documents as a group will reveal . . . counsel's selection process, and thus his mental impressions." *Id* at 355. Therefore, while many of the documents requested by the Smiths through ROGs 10–16 and RFP 7 may be discoverable as facts, the underlying supporting documents and tangible items are protected as Metropolitan's counsel's work product. *See id.*

Similarly, the Smiths' RFP 10 request for documents that support Metropolitan's offers to them, if made, to settle their property loss claim is also problematic. While Metropolitan produced some responsive documents, it still objected to RFP 10 on grounds of privilege and work product, citing *Amax Coal* once again. As previously discussed, *Amax Coal* confirms protection from discovery of documents or tangible items "that reveal[] the mental impressions, conclusions, opinions, and legal theories of a party's attorneys, specifically when asked to select from all discoverable documents those that contain, discuss, or relate to the various pleading responses advanced on a party's behalf." [DE 28 at 8 (citing *Amax Coal*, 597 N.E.2d at 355)]. Here, however, the Smiths contend that RFP 10—seeking documents that support any offers to settle their insurance claim—does not seek such protected information. Rather, the Smiths suggest that Metropolitan's offers to settle their insurance claim are the subject of this lawsuit. Metropolitan argues that responsive documents have already been produced or listed on the privilege log. Although the briefing on RFP 10 is vague at best, the Smiths seem uncertain as to what exactly Metropolitan has produced.

To the extent that the documents sought through RFP 10 include Metropolitan's counsel's mental impressions, conclusions, opinions, or legal theories, they are protected from disclosure. *Amax Coal* 597 N.E.2d at 354 (quoting *Hickman*, 329 U.S. at 510); *see also* Fed. R. Civ. P. Rule 26(b)(3). However, Metropolitan must identify with specificity the relevant documents already produced for another purpose.

18

### 4.   Policies, Manuals, Rules, Regulations, Standards, Training Guidelines

Requests for Production 1, 8, 11–14, and 16 seek policy and training materials used by Metropolitan when valuing the Smiths' insurance claim. Metropolitan objects to each request arguing that the Smiths have failed to show how the requests are reasonably calculated to lead to the discovery of admissible evidence. Metropolitan has provided precious little support for their objections. Any reliance on judicial estoppel is as misplaced here as it was above. Judicial estoppel does not bar the Smiths from discovery that will provide insight into Metropolitan's claim valuation process and their bad faith claim against Metropolitan.

### a.   RFP 8

According to the Smiths, the claim procedures and policy manuals relating to homeowner policy claims requested in RFP 8 are necessary to see if Metropolitan acted consistent with their own policies and are thus relevant to their bad faith claim. Indeed, comparing how Metropolitan handled the Smiths' claim to its own claims processing policies could lead to admissible evidence relevant to whether there was a reasonable basis to deny the Smiths' claim and whether Metropolitan knew there was no reasonable basis to deny their claim. *See Thorne*, 899 F. Supp. 2d at 826–27. Thus, the manuals requested in RFP 8 are discoverable.

### b.   RFP 1

Despite Metropolitan's objections to the contrary, the Smiths also argue that their

RFP 1—seeking all policy and other manuals, instructions, rules, regulations, standards, or directions of Metropolitan, pertaining to handling claims made by homeowners' policies—is appropriately limited to the materials pertaining to the handling of homeowners' policies and that the materials are relevant to Plaintiffs' bad faith claim. Metropolitan argues that RFP 1 is overly broad, vague, and seeks proprietary information. Metropolitan contends that RFP 1 should be limited to fire-damage claims, not water-damage and burglary claims.

The scope of discovery is broad under Fed. R. Civ. P. 26(b)(1). And RFP 1 asks for additional information about how the Smiths' property loss claim was handled, or should have been handled, which has already been determined to be relevant to their bad faith claim. However, the Smiths have not shown that information about how Metropolitan handled claims unrelated to fire damage are relevant to this case based on the Smiths' fire-damage property loss claim. Furthermore, the Smiths failed to address how the requested materials effective before the date of the fire or used by employees who did not work on their claim are relevant to establishing the necessary elements of their bad faith claim. Therefore, the Smiths are only entitled to materials requested in RFP 1 that relate to fire-damage claims and Metropolitan employees who worked on the Smiths' claim on or after May 20, 2018 (the date of the fire).

### c.      RFPs 8, 11–14, and 16

In RFPs 8, 11–14, and 16, the Smiths ask for various education and training guidelines documents used by Metropolitan. Metropolitan argues that the Smiths have

not addressed how the requested documents are relevant or will lead to admissible evidence. Furthermore, Metropolitan objects to the requests as overbroad, unduly burdensome, and seeking proprietary information. The Smiths contend that the information is relevant to their bad faith and breach of contract claims and suggest that Metropolitan pursue a protective order for any proprietary information.

Under Indiana law, "[c]ontracts of insurance are subject to the same rules of construction as are other contracts . . . ." *Jackson v. Jones*, 804 N.E.2d 155, 158 (Ind. Ct. App. 2004) (citing *Ramirez v. Am. Fam. Mut. Ins. Co.*, 652 N.E.2d 511, 514 (Ind. Ct. App. 1995)). "The essential elements of a breach of contract action are the existence of a contract, the defendant's breach thereof, and damages." *Rice v. Hulsey*, 829 N.E.2d 87, 89 (Ind. Ct. App. 2005) (citing *Gatto v. St. Richard Sch., Inc.*, 774 N.E.2d 914, 920 (Ind. Ct. App. 2002)). The Smiths baldly assert that the requested materials are relevant to their breach of contract claim but without further explanation. As such, the Smiths have not shown how the requested training and employee education documents are relevant to the existence of the contract between themselves and Metropolitan, any breach of that contract by Metropolitan, or their own damages. Nevertheless, the requested materials are relevant to their bad faith claim to the extent they show how their claim was handled or should have been handled.

With that said, the scope of RPFs 8, 11–14, and 16 is overly broad. Through RFP 11, the Smiths are only entitled to documents used, or available for use, by Metropolitan

claim adjusters who worked on the Smiths' claim on or after May 20, 2018. Similarly, in response to RFPs 8, 12–14, and 16, Metropolitan need only produce documents used, or available for use, by its employees who worked on the Smiths' claim. Metropolitan may seek a protective order as necessary and appropriate to protect this information from public disclosure. *See* Fed. R. Civ. P. 26(c); *Citizens First Nat'l Bank of Princeton v. Cincinnati Ins. Co.*, 178 F.3d 943, 944 (7th Cir. 1999).

### 5.   Documents Relating to Insurance Claims Made by the Smiths

Requests for Production 2 and 3 seek information relating to insurance claims made by the Smiths.

#### a.   RFP 2

Specifically, in RFP 2, the Smiths seek all documents, hard-copy and electronic, and tangible items relating to their claim at issue in this lawsuit. Metropolitan objects arguing that it already responded to the request and any other responsive information is protected by attorney client and/or work product doctrine and listed accordingly in the privilege log. Metropolitan also contends RFP 2 is overly broad, unduly burdensome, and beyond the scope of Fed. R. Civ. P. 26(b). The Smiths argue that RFP 2 will provide insight into how their claim was handled and is therefore relevant to their bad faith claim.

First, there is no doubt that documents related to the Smiths' claim is relevant. Metropolitan has not demonstrated with specificity why it finds RFP 2 overly broad. *See Gingerich*, 273 F.R.D. at 536. Thus, Metropolitan is obligated to produce all information

responsive to RFP 2. What is unclear, however, is whether Metropolitan has already

produced the full range of discoverable information responsive to RFP 2 and in its

possession or control. Metropolitan's privilege log is also extremely vague and fails to

provide the assurance of complete production necessary to satisfy its discovery

obligations. Under Fed. R. Civ. Pro. 26(b)(5)(A),

> When a party withholds information otherwise discoverable by claiming
> that the information is privileged or subject to protection as trial-
> preparation material, the party must: (i) expressly make the claim; and (ii)
> describe the nature of the documents, communications, or tangible things
> not produced or disclosed—and do so in a manner that, without revealing
> information itself privileged or protected, will enable other parties to
> assess the claim.

"[A] timely and adequate privilege log is required by the federal rules, and that failure

to serve an adequate privilege log may result in a waiver of any protection from

discovery." *Babych v. Psychiatric Sols., Inc.*, 271 F.R.D. 603, 608 (N.D. Ill. 2010).

Here, Metropolitan's privilege log contains only three items: (1) "Claim Notes

created after suit was filed on 12/19/2019," (2) "Correspondence between

[Metropolitan] and counsel Kevin Tyra," and (3) "Invoices from The Tyra Law Firm to

Metropolitan." [DE 30-2 at 2]. The entries represent groupings of documents with no

description of who created, sent, received, or otherwise contributed to the drafting or

delivery of the allegedly privileged documents and no indication of the date or date

range of the logged documents. *See In re Bridgestone/Firestone, Inc., ATX, ATX II*, 129 F.

Supp. 2d 1207, 1218–19 (S.D. Ind. 2001) (stating privilege log should identify name and

capacity of any author or recipient; general description of type of document; date of

document; and general description of subject matter); *cf. In re Grand Jury Proc.*, 220 F.3d 568, 571 (7th Cir. 2000) ("An assertion of privilege therefore must be made on a document-by-document basis."). Thus, Metropolitan's privilege log fails to provide sufficient information to permit the Court and other parties to test the merits of Metropolitan's privilege claim. *See Equal Emp. Opportunity Comm'n v. BDO USA, L.L.P.*, 876 F.3d 690, 697 (5th Cir. 2017). Therefore, the Smiths' are entitled to a privilege log that provides the necessary information.

### b.      RFP 3

The Smiths' RFP 3 seeks all documents, hard-copy and electronic, for any claim—not just the instant fire-damage claim—made by Smith's relating to their home address. Metropolitan reports having produced documents related to the fire-damage claim and argues that the Smiths have not specifically identified what additional documents should be produced or how they are relevant and discoverable. The Smiths contend, without meaningful support, that the requested information is relevant to their bad faith allegations. As noted above, information related to the handling of the Smiths' fire-damage claim and fire-damage claims by other policyholders is relevant to the Smiths' bad faith claim. However, the Smiths make no suggestion that they presented any other fire-damage claims to Metropolitan. Without more, the Court cannot discern how these materials, not directly related to their fire-damage claim or other fire-damage claims, are relevant here. Therefore, Metropolitan need not produce anything further in response to RFP 3.

### 6. Paperwork Required to Complete

Through RFP 9, the Smiths ask for all applications, policies, or paperwork that they were required to fill out and complete for Metropolitan. Metropolitan objects to RFP 9 as not limited in scope and irrelevant beyond documents already produced. The Smiths failed to rebut Metropolitan's argument by choosing not to file a reply brief. Moreover, their brief in support of their instant Motion does not discuss with specificity how the requested materials are relevant to their bad faith claim. Lacking any developed argument, the Court cannot discern how the requested paperwork, which the Smiths could have a copy of already, is discoverable. *See United States v. Parkhurst*, 865 F.3d 509, 524 (7th Cir. 2017) (undeveloped arguments are waived). Therefore, Metropolitan's objection to RFP 9 is sustained.

### 7. Employee Information

Through RFP 15, the Smiths seek delineated information for all employees who worked on or were involved in the handling of their fire-damage claim. Specifically, the Smiths ask for "[e]ach employee's skills inventory or assessment documentation; and [e]ach employee's [c]omplete performance review documentation; and Salary Review Summary." [DE 27-1 at 11]. The court has "broad discretion to limit a request for the discovery of personnel files, in order to prevent the dissemination of personal or confidential information about employees." *Brunker v. Schwan's Home Serv., Inc.*, 583 F.3d 1004, 1010 (7th Cir. 2009) (citing *Balderston v. Fairbanks Morse Engine Div. of Coltec Indus.*, 328 F.3d 309, 320 (7th Cir.2003)). When assessing whether personnel files should

be compelled, "the court should consider the totality of the circumstances, weighing the value of the material sought against the burden of providing it, and taking into account society's interest in furthering the truthseeking function in the particular case before the court." *Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 681 (7th Cir. 2002) (internal quotations omitted).

Here, Metropolitan indicates that it has already produced the names of relevant employees and states that the requested information will not show that the employees were encouraged to provide low value for claims. Yet the Smiths insist that the employees would have direct knowledge of the handling of their claim and possible evidence of corporate tactics to lower recoveries on property loss claims. Yet such information can be solicited through depositions. Moreover, the Smiths have not developed any argument to suggest the employees' personal performance and salary records would reflect corporate claims handling strategies. Thus, the Smiths have not met their burden to establish relevance with specificity. *See Greenbank,* 2019 WL 6522885, at *3; *United States v. Lake Cnty. Bd. of Comm'rs,* 2006 WL 978882, at *1. Accordingly, Metropolitan's objection is sustained.

### 8.    Requests with Vague Terms

RFPs 17-19 seek information relating to programs evaluating claim performance, reports for cost claim comparison, and all claim consultant's files relating to the Smiths' fire-damage claim. Metropolitan objects arguing that the terms "claim performance," "claim-cost comparison," and "claim consultant" are vague. Metropolitan's request for

clarification, originally sent to the Smiths' counsel in an email dated September 23, 2020 [DE 30-2], has gone unanswered. The Smiths only reiterate this terminology in the instant Motion without further elaboration. As such, the Smiths have not overcome Metropolitan's reasonable objection to RFPs 17–19. Accordingly, Metropolitan's objection is sustained.

### 9.   Expert Materials

Through RFPs 21–24, the Smiths seek materials related to experts who Metropolitan expects will testify. Metropolitan, however, has indicated that it does not intend to call any expert witnesses. The Smiths have not rebutted Metropolitan's assertion. Therefore, Metropolitan's responses to RFPs 21–24 are complete.

### III.   CONCLUSION

For the reasons discussed above, the Court **GRANTS IN PART and DENIES IN PART** Plaintiff's Motion to Compel [DE 27]. Metropolitan is **ORDERED** to supplement its production consistent with this Opinion *instanter* but not later than **August 13, 2021**. The parties are **REMINDED** of their ongoing obligation to supplement their production of discovery responses throughout the remainder of this litigation pursuant to Fed. R. Civ. P. 26(e) and this Court's Rule 16(b) Scheduling Order [DE 14].

With Plaintiffs' instant Motion to Compel resolved, the deadline for the completion of all discovery is **EXTENDED** until **September 17, 2021**. [*See* DE 33]. Defendant's deadline to refile its partial motion for summary judgment is now set for **August 25, 2021**. [*See* DE 39]. Additionally, Plaintiffs' Motion for Status Conference,

which lacks any explanation for why the status conference is warranted, is **DENIED** for

lack of good cause. [DE 40].

      **SO ORDERED** this 22nd day of July 2021.

s/Michael G. Gotsch, Sr.
Michael G. Gotsch, Sr.
United States Magistrate Judge
